**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SEAN LAMOUNT MOTON** | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 19-5014** |
| | : | |
| **BRANDON HARRIS, ET AL** | : | |

McHUGH, J.                                                                                                                                                                                                       OCTOBER 29, 2020

**MEMORANDUM**

    Plaintiff brings this action under 42 U.S.C. § 1983 alleging use of excessive force, retaliation, and failure to provide medical care to an arrestee, under the First, Fourth, and Fourteenth Amendments. All the claims derive from the circumstances surrounding Plaintiff's arrest as he was walking toward his Coatesville home. Plaintiff seeks to characterize the arresting officers' conduct in taking him into custody and allegedly denying him medical care as retaliatory in nature for his criticizing their actions, thereby violating his First Amendment rights. Defendants seek dismissal of the First Amendment claims under the doctrine of qualified immunity, arguing that there is insufficient precedent to support them. They further seek dismissal of his Fourth Amendment claims for use of excessive force, offering only a minimum of argument and precedential support. Plaintiff's First Amendment claims will be dismissed without prejudice with leave to amend, but in all other respects Defendants' motion will be denied.[1]

**I.**     **Factual Background**

    On September 27, 2019, Plaintiff Sean Lamount Moton alleges that he was headed to his house at 134, N. 5th Avenue in Coatesville, PA, when he was encountered by Defendants—Officer Brandon Harris and Officer Thompson of the Coatesville Police Department. Am.

---

[1] Defendants filed a partial Motion to Dismiss, which does not speak to Plaintiff's Count II claims under the Equal Protection Clause of the 14th Amendment.

1

Compl. ¶ 7. Plaintiff "complained about why they were stopping him and tried to explain to them there was no basis for them to arrest him." *Id.* Next, Officer Harris "reached for Plaintiff's arm, put his left arm between Plaintiff's right arm and his arm and put Plaintiff's right arm behind Plaintiff's back. Plaintiff asked him what was going on." Am. Compl. ¶ 8. At that point, Officer Harris "picked Plaintiff off the ground and threw him down to the ground with great physical force." Am. Compl. ¶ 9. "Officer Thompson then jumped on Plaintiff's back and put his left arm behind his back, aggravating the injury Plaintiff received when he was thrown to the ground." Am. Compl. ¶ 10.

Mr. Moton alleges that "[a]t no time in his interaction with Defendants did Plaintiff attempt to escape, say he would leave or refuse to cooperate with Defendants." Am. Compl. ¶ 15. Moreover Plaintiff claims that he "never struck Defendants, threatened to physically harm them or took any actions that a reasonable person would consider to be a threat to the physical safety of Defendants or anyone else present." Am. Compl. ¶ 17. He states that he "was never armed in the presence of Defendants nor did he tell them he was armed." Am. Compl. ¶ 18. Furthermore, "[t]here was no emergency at the scene where Defendants arrested Plaintiff nor were there bystanders that posed a threat to the safety of police or the public." Am. Compl. ¶ 20. In addition, "Defendants never asked Plaintiff to extend his hands so they could handcuff him," Am. Compl. ¶ 16, "and the circumstances did not require he be rushed or transported quickly to the police station without being handcuffed." Am. Compl. ¶ 20.

Plaintiff alleges that he "suffered a very painful dislocated shoulder and/or torn rotator cuff and/or shoulder ligament or related injury and injury to his neck as a result of these actions." Am. Compl. ¶ 11. Despite the fact that he told the Defendants "he had very severe pain in his shoulder and neck and that he had problems using his shoulder," and asked if they would take

him to the hospital, "[t]hey made no effort to obtain medical care for him." Am. Compl. ¶ 12. He "was not seen by a doctor until he was in Chester County Farms Prison," where it was confirmed that his shoulder was dislocated. Am. Compl. ¶ 13. There he received pain medication and that "his left arm was put in a sling." Am. Compl. ¶ 14. Now Plaintiff "must use his right arm to lift his left arm. Am. Compl. ¶ 12. The injury requires surgery. *Id.* Finally, it is alleged that "Plaintiff was not charged with a crime as a result of what occurred September 27, 2019." Am. Compl. ¶ 21.

## II. Legal Standard

In this Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III. Count I: Plaintiff's Claims of Retaliation under the First Amendment

Plaintiff appears to argue that the Defendants' acts, including the arrest itself, the use of excessive force, and the failure to provide medical care, violate his rights under the First Amendment. Pl.'s Resp. to Defs.' Mot. to Dismiss 2, 10, ECF No. 24. Defendants have moved to dismiss on the grounds of qualified immunity. Defs.' Mot. to Dismiss 3, ECF No. 21. I will address each claim separately.

### A. Plaintiff's Claims of Retaliatory Use of Excessive Force and Failure to Provide Medical Care violating the First Amendment

Defendants move to dismiss Plaintiff's First Amendment claims under the doctrine of qualified immunity. Defs.' Mot. to Dismiss 3**.** In assessing whether the Defendant officers are shielded from liability based on qualified immunity, I must accept Plaintiff's well-pleaded allegations of fact as true and draw all reasonable inferences in his favor. *Fowler*, 578 F. 3d at

210 (internal citations omitted); *see George v. Rehiel*, 738 F.3d 562, 571 (3d Cir. 2013) (citing *Torisky v. Schweiker*, 446 F.3d 438, 442 (3d Cir. 2006)).

"Qualified immunity shields government officials from personal liability for civil damages 'insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'" *George*, 738 F.3d at 571-72 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine is intended to give officers "breathing room to make reasonable but mistaken judgments about open legal questions." *Id.* at 572. Consequently, "[a]ny claim of qualified immunity must be resolved at the earliest possible stage of the litigation." *Miller v. Clinton County*, 544 F. 3d 542, 547 (3rd Cir. 2008). Defendants stress that the doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); Defs.' Mot. to Dismiss 3.

To overcome the defense of qualified immunity, Plaintiffs must allege facts showing that the Defendant officers' conduct (1) "violated a . . . constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *George*, 738 F.3d at 572 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Following *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), I do not need to undertake the two-part inquiry in sequential order. Thus I will begin by focusing on the second part of the test concerning whether the law was clearly established for Plaintiffs' First Amendment claims of excessive force and failure to provide medical treatment.

It is Defendants' burden to establish their entitlement to the affirmative defense of qualified immunity. *See Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014); *see also Richardson v. Barbour*, No. 2:18-CV-01758, 2020 WL 4815829, at *11 (E.D. Pa. Aug. 19, 2020) (citing the rule that Defendants bear the burden in establishing entitlement to qualified immunity on a motion to dismiss). "Thus . . . they must prove that the constitutional right in question was

4

not clearly established at the time of the incident." *Gaymon v. Borough of Collingdale*, 150 F. Supp. 3d 457, 462 (E.D. Pa. 2015). For purposes of this inquiry, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Shneyder v. Smith*, 653 F.3d 313, 329 (3d Cir. 2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In evaluating the state of the law in 2020, the "salient question" is whether the officers had "fair warning" that their conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

1. <u>Was the Right to be free of Retaliatory Use of Excessive Force under the First Amendment Clearly Established?</u>

Plaintiff summarily concludes that "[r]etaliation by excessive force for complaints about police behavior is an established claim." Pl.'s Resp. to Defs.' Mot. to Dismiss 4. It cannot be denied that the law was clear back to 1987 that the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987). And the law within the Third Circuit was clear dating back to 2006 that there is a First Amendment right to be free from police retaliation when one complains about officers' conduct. *See Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

However, since at least 1989, the proper framework for analyzing excessive force claims pertaining to an arrest is under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 388 (1989). As the Supreme Court instructed in *Graham*:

> Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person.

*Graham*, 490 U.S. at 394 (internal citations omitted). The Third Circuit has followed suit, instructing that whether there is a constitutional violation with regard to excessive force is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard.'" *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007) (quoting *Graham,* 490 U.S. at 394).

I am not aware of, nor has Plaintiff provided, any case law within this circuit in which courts have analyzed excessive force claims pertaining to an arrest under the lens of the First Amendment, let alone found First Amendment violations.[2] In framing Defendants' actions as violating the First Amendment, Plaintiff principally relies upon an Eighth Circuit decision, *Peterson v. Kopp*, 754 F.3d 594, 603 (8th Cir. 2014). That is simply not sufficient to put the officers whose actions occurred in this judicial district on "fair warning" that their behavior could violate the First Amendment under the qualified immunity doctrine. *See Fields v. City of Philadelphia*, 862 F.3d 353, 355 (3d Cir. 2017) (establishing that whether a right was clearly established requires a "robust consensus of cases of persuasive authority in the Courts of Appeals" where there is no Supreme Court or binding Third Circuit precedent) (internal quotations omitted);[3] *see also Reichle v. Howards*, 566 U.S. 658, 665 (2012) ("[T]he right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause.").

---

[2] In contrast, as will be discussed more fully below, Plaintiff's Count III excessive force claims arising under the Fourth Amendment will survive Defendants' Motion to Dismiss.

[3] District court decisions, though not binding, also "play a role in the qualified immunity analysis." *Fields*, 862 F.3d 353 at 361. However, Plaintiff has not provided district court decisions within this Circuit relevant to retaliation via use of excessive force by police officers in violation of plaintiffs' First Amendment rights. Instead he has provided Supreme Court decisions such as *Lozman v. City of Riviera Beach*, which involve claims that bear little to no resemblance to the claims at issue here. 138 S.Ct. 1945 (2018) (Plaintiff alleged that city retaliated against him for criticizing municipal development project).

Thus, Defendants are entitled to qualified immunity on Plaintiff's claim of excessive force in violation of the First Amendment.

2. <u>Was the Right to be free of Retaliatory Denial of Medical Treatment under the First Amendment Clearly Established?</u>

Plaintiff summarily concludes that "[i[f retaliation by excessive force is a claim, retaliation by . . . failure to provide medical care is even more so." Pl.'s Resp. to Defs.' Mot. to Dismiss 4. To reiterate, the law was clear back to 1987 that the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987). And the law has similarly been clear for decades that officers acting in deliberate indifference to the medical needs of arrestees persons in custody violate the Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (deliberate indifference to serious medical needs of person in state custody is a violation of person's eighth amendment right actionable under section 1983)); *Walmsley v. City of Philadelphia*, 872 F.2d 546, 552-53 (3d Cir. 1989) (citing *Estelle,* 429 U.S. 97) (finding district court erred when it directed a verdict on plaintiff's claims of indifference to medical needs, and that reasonable jury could find that police officers' failure to provide medical attention to an arrestee would amount to a civil rights violation).

But Plaintiff has not cited, nor am I aware of, any precedent providing that the First Amendment provides a constitutional basis for the provision of adequate medical care to arrestees.[4] Therefore, the "contours of the right" are not "sufficiently clear that a reasonable

---

[4] Instead Plaintiff cites to *Groman v. Twp. of Manalapan* for the proposition that such a claim "may be under the 4th or 14th amendments." 47 F.3d 628, 637 (3d Cir. 1995); Pl.'s Resp. to Defs.' Mot. to Dismiss 2. This case is not relevant in the First Amendment context. Plaintiff also cites to *Hill*, which involves claims that, once again, bear little resemblance to the claims at issue here. 482 U.S. 451 (1986) (involving a civil rights action where plaintiff challenged the constitutionality of a city ordinance which made it illegal to oppose or interrupt a police officer in the execution of his duty.)

7

official would understand that what he is doing violates that right." *Shneyder*, 653 F.3d at 329; *see Reichle*, 566 U.S. at 665 ("the right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause."). Thus, Defendants were not on notice that Plaintiff had a First Amendment right to receive adequate medical care and are entitled to qualified immunity on this claim as well.

Accordingly, I will dismiss Plaintiff's claims regarding Defendants' First Amendment claims of retaliatory use of excessive force and failure to provide medical care without prejudice,[5] with leave to amend his Complaint.[6]

## B. Plaintiff's Claim of Retaliatory Arrest in violation of the First Amendment

Defendants also move to dismiss Plaintiff's apparent[7] claims of retaliatory arrest under the doctrine of qualified immunity. However, I need not reach the issue of immunity because the claim, if it is indeed pursued by the Plaintiff, is insufficiently pled at the outset.

---

[5] Because I hold that that these rights are not "well established" under the First Amendment, I need not consider the second question of whether Plaintiff has stated a plausible claim that Defendants violated his First Amendment rights. That said, I am persuaded that Plaintiff has sufficiently pled such a claim in both instances.

[6] The Third Circuit has held that in civil rights cases, "district courts must *sua sponte* grant leave to amend before dismissing a complaint for failure to state a claim." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc*., 482 F.3d 247, 252 (3d Cir. 2007). This principle "appl[ies] equally to *pro se* plaintiffs and those represented by experienced counsel." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"); *see Moore v. Solanco Sch. Dist.*, No. 5:19-CV-02621, 2020 WL 3888069, at *18 & n.6 (E.D. Pa. July 10, 2020) (*"Although Plaintiffs previously filed an amended complaint, it was filed before the Court issued an opinion identifying the deficiencies in the pleadings and there is nothing to suggest that Defendants will be prejudiced by allowing Plaintiffs an opportunity to amend.").

[7] It is not entirely clear based on Plaintiff's pleadings and briefing whether or not he seeks to pursue a claim of retaliatory arrest. *See* Pl.'s Resp. to Defs.' Mot. to Dismiss 9-10 ("Plaintiff has not alleged a retaliatory arrest."); *cf.* Am. Compl. ¶ 22 ("As a result, and in retaliation for those complaints, Defendants arrested Plaintiff and used excessive force.")

8

The Supreme Court has held that in cases involving retaliatory actions by government officials that suppress speech, plaintiffs must demonstrate a causal connection between the retaliatory motive and their injury. *Hartman v. Moore*, 547 U.S. 250, 259-60 (2006) (explaining that "but-for" causation means that the adverse government act would not have taken place absent the retaliatory motive).  For First Amendment retaliatory arrest claims, where it is "particularly difficult to determine whether the adverse government action was caused by the officers' malice or by the plaintiff's potentially criminal conduct," *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019), a plaintiff must demonstrate that the underlying charge lacked probable cause. *See Hartman*, 547 U.S. at 265-66.

However, "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S. Ct. at 1727.  This "narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.*  In *Nieves*, the court cited the offense of jaywalking as one such circumstance. *Id.*

Here, Plaintiff has not alleged that Defendants lacked probable cause for his arrest, but instead argues that he fits within the exception outlined in *Nieves*—that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been. Pl.'s Resp. to Defs.' Mot. to Dismiss 9; Am. Compl. ¶ 26.  According to Plaintiff, he "was similarly situated with other persons wanted on warrants or who had the criminal record Plaintiff had but they were not treated as he was." Am. Compl. ¶ 26  Plaintiff cannot argue, on the one hand, that he does not know why he was arrested, *see* Pl.'s Resp. to Defs.' Mot. to Dismiss 9, and on the other hand, assert that he was not treated the same as persons similarly situated.  Am.

9

Compl. ¶ 26. Moreover, there is a fundamental difference between the summary offense of jaywalking cited as an example in *Nieves,* and someone who admits to a criminal record and the issuance of a warrant for his arrest. 139 S. Ct. at 1727. This conclusory allegation, without more, does not suffice to state a plausible claim within the narrow exception recognized in *Nieves. Id.*

Accordingly, Plaintiff's claim of retaliatory arrest will be dismissed without prejudice, with leave to amend his Complaint.

### IV.     Plaintiff's Claims of Excessive Force under the Fourth Amendment

Defendants move to dismiss Plaintiff's claims against the individual officers, which are based on the Fourth Amendment's prohibition against the excessive use of force by government officials.[8] Am. Compl. ¶¶ 28-29.  The Plaintiff alleges that the individual Defendants employed unconstitutionally excessive force during the arrest when Officer Harris, without provocation, "picked Plaintiff off the ground and threw him down on the ground with great physical force," Am. Compl. ¶ 9, and also when "Officer Thompson . . . jumped on Plaintiff's back and put his left arm behind his back, aggravating the injury Plaintiff received when he was thrown to the ground." Am. Compl. ¶ 10.

As correctly noted by both parties, claims that law enforcement officials used excessive force in the course of making an arrest "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Curley*, 499 F.3d at 206 (quoting *Graham*, 490 U.S. at 388)).[9]  Next, "to state a claim for excessive force as an unreasonable seizure under the Fourth

---

[8] Plaintiff argues that Defendants waived argument on the "excessive force" claim. *See* Pl.'s Resp. to Defs.' Mot. to Dismiss 1. Defendants' motion indeed focuses exclusively on the standard of review and then summarily concludes that Plaintiff's excessive force claim ought to be dismissed. Defs.' Mot. to Dismiss 5-6. Although Defendants did not pursue argument vigorously, I have analyzed the relevant law and concluded that the motion would be denied even if they had.

[9] Defendants appear to mischaracterize Plaintiff's briefing in arguing that Plaintiff actually wishes that I analyze his excessive force claims as 14th amendment substantive due process violations. Defs.' Mot. To Dismiss at 5-6.

Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Estate of Smith v. Marasco,* 430 F.3d 140, 148 (3d Cir. 2005) (internal quotations omitted).

Reasonableness of force under *Graham* is analyzed by taking into account "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 9 (1985)). Moreover, as the Third Circuit has instructed:

> We also assess the physical injury to the plaintiff, "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action . . . , the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."

*El v. City of Pittsburgh*, No. 18-2856, 2020 WL 5541155, at *5 (3rd Cir. 2020) (quoting *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)). These factors are not exclusive; the reasonableness of force depends on the "totality of the circumstances." *Graham,* 490 U.S. at 396 (quoting *Garner*, 471 U.S. at 8-9).

Plaintiff has alleged that while he "was on his way to his house on 5th Avenue in Coatesville, PA.," he was encountered by the Defendants. Am. Compl. ¶ 7. He "complained about why they were stopping him and tried to explain to them there was no basis for them to arrest him." *Id.* Next, "Defendant Brandon Harris reached for Plaintiff's arm, put his left arm between Plaintiff's right arm and his arm and put Plaintiff's right arm behind Plaintiff's back. Plaintiff asked him what was going on." Am. Compl. ¶ 8. At that point, Defendant Harris picked Plaintiff up and threw him to the ground, and subsequently Defendant Thompson jumped on his back, and put his left arm behind his back, which exacerbated the injury he suffered when he was

---

Plaintiff's Amended Complaint is clear that he is pursuing excessive force claims under the Fourth Amendment. Am. Compl. 4.

11

thrown to the ground. Am. Compl. ¶¶ 9-10. At the very least, Plaintiff alleges that he suffered a dislocated shoulder during the incident. Am. Compl. ¶¶ 11, 13.

Plaintiff further alleges that "[a]t no time in his interaction with Defendants did Plaintiff attempt to escape, say he would leave or refuse to cooperate with Defendants, Am. Compl. ¶ 15, that "Plaintiff never struck Defendants, threatened to physically harm them or took any actions that a reasonable person would consider to be a threat to the physical safety of Defendants or anyone else present," Am. Compl. ¶ 17, that "Plaintiff was never armed in the presence of Defendants nor did he tell them he was armed," Am. Compl. ¶ 18, and that "[t]here was no emergency at the scene where Defendants arrested Plaintiff nor were there bystanders that posed a threat to the safety of police or the public." Am. Compl. ¶ 20. Moreover Plaintiff states that "Defendants never asked Plaintiff to extend his hands so they could handcuff him," Am. Compl. ¶ 16, and that "the circumstances did not require he be rushed or transported quickly to the police station without being handcuffed." *Id*. at ¶ 20.

[T]o state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a seizure occurred and that it was unreasonable." *Marasco,* 430 F.3d at 148. Here it is clear that a seizure occurred: the Defendants allegedly used excessive force during the course of an arrest. Am. Compl. ¶ 20; *Bryant v. City of Philadelphia*, 890 F. Supp. 2d 591, 599 (E.D. Pa. 2012), *aff'd*, 518 F. App'x 89 (3d Cir. 2013) ("[A]n arrest constitutes the most clear example of a seizure . . .").

I next consider whether the force used by Defendants during the seizure was reasonable. I do so by assessing the totality of the circumstances under the facts alleged. *Graham* 490 U.S. at 396. The facts alleged do not indicate that Plaintiff posed an immediate threat, nor that he resisted arrest, nor that he was armed, nor that the Defendants had to contend with additional

persons. Am. Compl. at ¶¶ 15-21.  The facts alleged also indicate that Plaintiff suffered an injury as a result of having been thrown to the ground and jumped on by the Defendants. *Id.* at ¶¶ Am. Compl. at ¶¶ 8-13.

Admittedly the Plaintiff has not presented the Court with facts regarding the severity of the crime for which the Plaintiff was arrested,[10] which is a factor to consider in the *Graham* analysis. 490 U.S. at 396; *see McCracken v. Freed*, 243 F. App'x 702, 710 (3d Cir. 2007) (affirming summary judgment on an excessive force claim, in part, because Plaintiff's "history of violence and pending weapons charge" meant that "it was reasonable to believe that he might be armed").

However, assuming the veracity of the facts outlined by Plaintiff, as I must at this stage, I see no basis for dismissal.  *See Couden v. Duffy,* 446 F.3d 483, 497 (3d Cir. 2006) (reversing grant of summary judgment where officers used mace, pointed guns, and handcuffed an otherwise cooperative and unarmed subject)*; Baker v. Monroe Twp.,* 50 F.3d 1186, 1193 (3d Cir.1995) (reversing grant of summary judgment where officers pointed guns at and handcuffed several members of a family where there was "simply no evidence of anything that should have caused the officers to use the kind of force they are alleged to have used"); *Wood v. Se. Pa. Transp. Auth.,* No. 14-4183, 2016 WL 2619411, at *8 (E.D. Pa. May 16, 2016) (determining that a reasonable jury could conclude that slamming the plaintiff against a vehicle was objectively unreasonable under the circumstances); *Clifton v. Borough of Eddystone*, 824 F. Supp. 2d 617, 629–30 (E.D. Pa. 2011) (concluding that "a reasonable jury could find 'yanking' [the] Plaintiff

---

[10] According to Plaintiff, he "believes he was arrested on a warrant or probation violation. Discovery will determine why he was arrested." Pl.'s Resp. to Defs.' Mot. to Dismiss 9. This is consistent with the factual averments in Plaintiff's Amended Complaint, which state that Plaintiff was either arrested pursuant to a warrant or pursuant to a probation violation. Am. Compl. ¶ 26. Plaintiff's initial Complaint, which he filed *pro se*, alleges that officers were executing a warrant of which he was not aware at the time. Compl. ¶ 4, ECF No. 1.

13

out of the car and 'slamming' her against the trunk of the car,'" along with pushing her while she was handcuffed, were excessive) (internal quotations omitted); *Verdier v. Borough,* 796 F. Supp. 2d 606, 626-27 (E.D. Pa. 2011) (denying summary judgment on excessive force claim where Plaintiff stated that he was "forcefully dragged out of his vehicle, slammed against the vehicle, held down, and shook up"); *Velez v. Fuentes*, No. CV15-6939, 2016 WL 4107689, at *4 (D.N.J. July 29, 2016) (denying motion to dismiss where Plaintiff alleged that he was forcibly removed from his car, sprayed in the face with pepper spray, and punched in the head).

Accordingly, Defendants' Motion to Dismiss as to Count III will be denied.

                                                 /s/ Gerald Austin McHugh
                                                 United States District Judge